# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| The Boon Insurance Agency, Inc., ) | Civil Action No.: 3:20-cv-02980-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Kelley Lloyd, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff The Boon Insurance Agency, Inc. filed this action against Defendant Kelley Lloyd seeking damages and injunctive relief based on claims for breach of contract, tortious interference with contractual relations, breach of the duty of loyalty, conversion, unjust enrichment, and specified violations of the South Carolina Trade Secrets Act ("SCTSA"), S.C. Code Ann. §§ 39-8-10 to -130 (West. 2020), the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 to -560 (West. 2020), the federal Computer Fraud and Abuse Act of 1986 ("CFAA"), 18 U.S.C. § 1030(a)–(h), and the federal Defend Trade Secrets Act of 2016[1] ("DTSA"), 18 U.S.C. § 1832–39. (ECF No. 1 at 11 ¶ 40–21 ¶ 128.)

This matter is before the court to address Plaintiff's Motion for Temporary Restraining Order (the "TRO Motion") pursuant to the DTSA, the SCTSA, and Rule 65(b) of the Federal Rules of Civil Procedure. (ECF No. 5.) After full consideration of Plaintiff's Motion, Complaint for Damages and Injunctive Relief, and all other matters presented, the court **GRANTS** Plaintiff's TRO Motion.

## I.    JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)

---

[1] The DTSA amended various sections of the Economic Espionage Act of 1996, 18 U.S.C. §§ 1831–1839.

based on Plaintiff's allegations that the action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00. (*See* ECF No. 1 at 2 ¶¶ 6–8.) Plaintiff alleges that it is a Delaware company, with its principal place of business in Austin, Texas. (*Id.* ¶ 6.) Plaintiff further alleges that Defendant is a resident of Columbia, South Carolina. (*Id.* ¶ 6.) Moreover, after considering the Complaint's allegations, the court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (*Id.* ¶ 8; *see also id.* at 10 ¶ 37.)

In addition to its jurisdiction under § 1332, this court also has subject matter jurisdiction over Plaintiff's claims via 28 U.S.C. § 1331, as they arise under laws of the United States, and specifically via 18 U.S.C. § 1030(g), which creates a civil cause of action arising out of violations of CFAA's provisions, and 18 U.S.C. § 1836, which creates a civil action for the owner of a misappropriated trade secret. The court may properly hear Plaintiff's state law claims based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (finding supplemental jurisdiction allows parties to append state law claims over which federal courts would otherwise lack jurisdiction to federal claims, so long as "[t]he state and federal claims . . . derive from a common nucleus of operative fact"); *De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1152 (D.N.M. 2015) ("The court can then exercise supplemental jurisdiction over other claims and parties that 'form part of the same case or controversy under Article III . . . .'" (citing 28 U.S.C. § 1367, *United Mine Workers*, 383 U.S. at 725)).

## II.     RELEVANT BACKGROUND TO PENDING MOTION

In support of its TRO Motion, Plaintiff submitted the Declaration of Keith Stueler, its National Sales Director. (*See* generally ECF No. 5-1.) In pertinent part, Stueler's Declaration

establishes the following facts for purposes of Plaintiff's TRO Motion:

1.      Plaintiff "is a highly specialized wholesale provider of health and welfare benefit plans to government contractor employers." (ECF No. 5-1 at 2 ¶ 4.) "Unlike most retail insurance services, [Plaintiff] provides wholesale services, meaning that it acts as an appointed representative of the carrier and acts as an intermediary for other insurance brokers . . . ." (*Id.* at 3 ¶ 4.)

2.      Plaintiff hired Defendant "on March 17, 2017 as a Sr. Regional Sales Manager" and gave her responsibility "over the Virginia, North Carolina and South Carolina region." (*Id.* at 3 ¶ 5.) Plaintiff was "responsible for managing and directly participating in significant sales efforts for [Defendant]'s clients, vendors and prospects in the region [and][] had access to confidential and trade secret information regarding all of [Plaintiff]'s clients, prospective clients, and vendors." (*Id.* ¶ 6.)

3.      In 2018, Plaintiff required Defendant to sign a Restrictive Covenant Agreement, which she did on September 1, 2018. (*Id.* at 4 ¶ 8 (referencing ECF No. 5-2 at 2–12).) In exchange, Defendant's salary was guaranteed for a year and she gained additional access to "confidential and trade secret information" and other "clients and prospects." (*Id.*)

4.      On January 15, 2020, Defendant signed Plaintiff's 2020 Compensation Schedule Agreement, which "documented changes to [Defendant]'s compensation, bonuses and commissions and provided her additional compensation opportunities, value and benefits." (*Id.* at 5 ¶ 14 (referencing ECF No. 5-3 at 2–7).) In exchange for Defendant signing the Compensation Schedule Agreement, Plaintiff provided Defendant "additional compensation opportunities, benefits and other value, including, but not limited to, the following: providing her access to additional confidential information (including updated client, prospect and vendor lists, and Blueprint – a proprietary marketing program/strategy); assigning her new clients and prospects; .

. . ." (*Id.*)

5.     On August 3, 2020, Defendant "forwarded significant confidential and trade secret information from her [work] e-mail account to her personal e-mail account." (*Id.* at 6 ¶ 18; *see also id.* at 6 ¶ 18(a)–7 ¶ 18(f).) Later that same day, Defendant "submitted her two-week notice of resignation," which Plaintiff declined making the end of Defendant's employment immediate. (*Id.* at 7 ¶ 18(f).)

6.     Since her resignation, Defendant has used Plaintiff's confidential business information to steal prospective clients, prospective client meetings, and other confidential and trade secret information from Plaintiff. (*See* ECF No. 5-1 at 8 ¶ 21–9 ¶.)

As a result of Defendant's actions, Plaintiff filed the instant action in this court on August 18, 2020, seeking injunctive relief and monetary damages. (ECF No. 1.) On August 19, 2020, Plaintiff filed the instant TRO Motion. (ECF No. 5.)

### III.     LEGAL STANDARD

The court's authority to issue temporary restraining orders arises from Rule 65 of the Federal Rules of Civil Procedure. Rule 65 provides as follows:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Motions for temporary restraining order are governed by the same general standards that govern the issuance of a preliminary injunction. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). In this regard, a party seeking a temporary restraining order must establish all four of the following elements: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance

of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). The United States Court of Appeals for the Fourth Circuit no longer recognizes a "flexible interplay among the four criteria" for a temporary restraining order. *Real Truth*, 575 F.3d at 347. Each of the four requirements "must be fulfilled as articulated." *De la Fuente v. S.C. Dem. Party*, C/A No. 3:16-cv-00322-CMC, 2016 WL 741317, at *2 (D.S.C. Feb. 25, 2016).

The court may only grant a temporary restraining order, which is issued "without written or oral notice to the adverse party," under the strict conditions set forth above. Fed. R. Civ. P. 65.

### IV.     ANALYSIS

A.     Plaintiff's Arguments

Plaintiff first argues that the court should grant its TRO Motion because it is likely to succeed on the merits of its claims. In support of this argument, Plaintiff asserts that Defendant stole trade secret information protected by both the DTSA and the SCTSA. Plaintiff further asserts that it will be successful because "(1) [Defendant] has clearly stolen [Plaintiff]'s confidential and trade secret information; (2) the restrictive covenants in the C[ompetition] S[chedule] Agreement are valid and enforceable as a matter of law; (3) [Defendant] has breached her contractual obligations by stealing, retaining and using [Plaintiff]'s confidential and trade secret information, and by soliciting [Plaintiff]'s clients, prospective clients and vendors; and (4) [Plaintiff] has already been harmed and will continue to be harmed by [Defendant]'s conduct if not enjoined." (ECF No. 5 at 9.)

Plaintiff next argues that it will suffer irreparable harm if the TRO Motion is not granted because "[e]ach customer, prospective customer or vendor that [Defendant] solicits or contacts

5

will likely represent similar or greater losses in revenue" for Plaintiff. (*Id.* at 20.) Moreover, as to the balancing of the equities, Plaintiff argues that its continuing loss of customers, prospective customers, and vendors as a result of the information stolen by Defendant is far greater than the possible harm that Defendant would suffer if interim relief is granted. To this point, Plaintiff asserts that Defendant is "simply enjoined from using confidential and trade secret information to which she is not entitled to possess" and she "can [still] sell numerous other types of insurance products unrelated to [Plaintiff]'s Business, and she can compete with [Plaintiff] for new business." (*Id.* at 21–22.)

Finally, Plaintiff argues that the court should grant the TRO Motion because it is in the public interest to "uphold contracts," enforce "restrictive covenants and employment agreements," protect "confidential information," and ensure "fair competition." (*Id.* at 22 (citing *Amerispec, Inc., v. Metro Inspection Serv., Inc.*, No. CIV.A.3:01-CV-0946-D, 2001 U.S. Dist. LEXIS 9259, at *6 (N.D. Tex. July 3, 2001); *Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 642 (D. Md. 1998); *Uhlig, LLC v. Shirley*, File No. 6:08-1208-HFF-WMC, 2008 WL 3057290, at *8 (D.S.C. Aug. 5, 2008)).)

B.     The Court's Review

Upon its review, the court observes that Plaintiff has provided the specific factual background/context and substantive information required by Rule 65 to consider the relief requested in the TRO Motion. Therefore, upon consideration of the Complaint, the Declaration of Keith Stueler and its Exhibits, the TRO Motion, and Memorandum in Support, the court makes the following findings as to Plaintiff's TRO Motion:

1.     *Likely Success on the Merits*

A plaintiff seeking a temporary restraining order must make a clear showing that he is

likely to succeed on the merits of his claim. *Winter*, 555 U.S. at 22. "Although this inquiry requires plaintiffs seeking [temporary restraining orders] to make a 'clear showing' that they are likely to succeed at trial, *Real Truth*, 575 F.3d at 345, plaintiff[] need not show a certainty of success, *see* 11A Charles Alan Wright et al., Federal Practice & Procedure § 2948.3 (2d ed. 1995). *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013). For purposes of the instant TRO Motion, Plaintiff alleges that it is likely to succeed on its claims alleging violation of the DTSA and the SCTSA. (*See* ECF No. 5 at 1.)

Under the DTSA, '[a]n owner of a trade secret that is misappropriated may bring a civil action [for damages or injunctive relief] . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1), (3)(A)–(B). To bring a claim under the DTSA, a plaintiff must establish: "(1) it owns a trade secret[2]; (2) the trade secret was misappropriated[3]; and (3) the trade secret implicates interstate or foreign

---

[2] Under the DTSA, a "trade secret" is:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information; . . . .

18 U.S.C. § 1839(3).

[3] Under the DTSA, "misappropriation" means:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who—(i) used improper means to acquire knowledge of the trade secret; (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—(I) derived from or through a person who had used improper

7

commerce." *Space Syss./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018) (citing § 1836).

The SCTSA allows for "[a] person aggrieved by a misappropriation, wrongful disclosure, or wrongful use of his trade secrets [to] bring a civil action to recover damages incurred as a result of the wrongful acts and to enjoin its appropriation, disclosure, use, or wrongful acts pertaining to the trade secrets." S.C. Code Ann. § 39-8-30(c) (West. 2020). "To state a cause of action under SCTSA where a former employee has misappropriated trade secrets, . . . the plaintiff [has] to show: (1) the existence of a trade secret[4]; (2) communicated in confidence by the plaintiff to the employee; (3) disclosed by the employee in breach of that confidence; (4) acquired by the defendant with knowledge of the breach of confidence; and (5) used by the defendant to the detriment of the plaintiff." *Nucor v. Bell*, 482 F. Supp. 2d 714, 725 (D.S.C. 2007) (citation omitted); *see also Sonoco Prods. Co. v. Guven*, C.A. No. 4:12-cv-00790-BHH, 2015 WL 127990, at *6 (D.S.C. Jan. 8, 2015) ("To establish a claim for misappropriation of trade secrets under the

---

> means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or (iii) before a material change of the position of the person, knew or had reason to know that—(I) the trade secret was a trade secret; and (II) knowledge of the trade secret had been acquired by accident or mistake; . . . .

18 U.S.C. § 1839(5).

[4] Under the SCTSA, a "trade secret" is:

> (a) information including, but not limited to, a formula, pattern, compilation, program, device, method, technique, product, system, or process, design, prototype, procedure, or code that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

S.C. Code Ann. 39-8-20(5) (West. 2020).

South Carolina Trade Secrets Act, a plaintiff must show: (1) the existence of a trade secret; (2) misappropriation,[5] wrongful use, or wrongful disclosure of a trade secret by the defendant; and (3) damages." (citations omitted)).

Given the similarity in the elements for claims brought under the DTSA and the SCTSA, the court, upon its review, finds that Plaintiff's allegations clearly establish a likelihood of success as to claims brought under both statutes. Specifically, Plaintiff's allegations demonstrate why its client/vendor lists are a trade secret and how it only disclosed those trade secrets to Defendant after she signed the Restrictive Covenant Agreement and 2020 Compensation Schedule Agreement, which, among other things, prohibited Defendant from using or disclosing Plaintiff's confidential trade secret information outside the scope of her employment with Plaintiff. (*See, e.g.*, ECF Nos. 5-2 at 4 § 2 ¶ (a), 5-3 at 5 ¶ R.) Thus, at the time Defendant learned of Plaintiff's trade secrets, Defendant clearly knew or had reason to know, by virtue of the Restrictive Covenant Agreement and 2020 Compensation Schedule Agreement, that her knowledge of Plaintiff's trade secrets was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

---

[5] Under the SCTSA, "misappropriation" is:

> (a) acquisition of a trade secret of another by a person by improper means; (b) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (c) disclosure or use of a trade secret of another without express or implied consent by a person who: (i) used improper means to acquire knowledge of the trade secret; or (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: (A) derived from or through a person who had utilized improper means to acquire it; (B) acquired by mistake or under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

S.C. Code Ann. 39-8-20(2) (West. 2020).

Plaintiff's alleged facts further reveal that Defendant misappropriated and is continuing to misappropriate such trade secrets in breach of those Agreements and has the ability to do so in South Carolina, North Carolina, and Virginia, thereby implicating interstate commerce. Therefore, the court finds that Plaintiff has adequately alleged facts demonstrating likelihood of success as to its DTSA claim and its SCTSA claim.

2. *Likelihood of Suffering Irreparable Harm Absent a TRO*

The party requesting a temporary restraining order must demonstrate that it is likely it will suffer irreparable harm absent the preliminary injunction. *Winter*, 555 U.S. at 22–23. The harm to be prevented must be of an immediate nature and not simply a remote possibility. *Am. Whitewater v. Tidwell*, No. 8:09-cv-02665-JMC, 2010 WL 5019879, at *11 (D.S.C. Dec. 2, 2010) (citing *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)). "When analyzing the irreparable harm element, there are two inquiries: 1) whether the plaintiff is indeed suffering actual and imminent harm; and 2) whether that harm is truly irreparable, or whether it can be remedied at a later time with money damages." *Sauer-Danfoss Co. v. Nianzhu Luo*, C/A No. 8:12-3435-HMH, 2012 WL 6042831, at *1 (D.S.C. Dec. 5, 2012) (quoting *First Quality Tissue SE, LLC v. Metso Paper USA, Inc.*, C/A No. 8:11-2457-TMC, 2011 WL 6122639, at *2 (D.S.C. Dec. 9, 2011)).

Plaintiff asserts that it suffers irreparable harm "every day that [Defendant] spends using [Plaintiff]'s confidential information to solicit [Plaintiff]'s customer[s], prospective customers, and vendors." (ECF No. 5 at 20.) The court finds that there is good cause to believe that immediate and irreparable harm has resulted to Plaintiff and will result in the future to Plaintiff unless Defendant is restrained and enjoined by order of this court. *E.g.*, *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("However, when

the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied."). Alternatively, there is no evidence that Defendant will suffer any harm if Plaintiff's TRO Motion is granted.

      3.     *The Balance of Equities and the Public Interest Factors*

Generally, in determining whether to grant a motion for injunctive relief, "[t]he court must also consider the balance of hardships between the litigants and the impact on the public at large prior to issuing an injunction." *Uhlig, LLC v. Shirley*, C/A No. 6:08-cv-01208-JMC, 2012 WL 2458062, at *4 (D.S.C. June 27, 2012).

Above, the court found that Plaintiff will suffer irreparable harm without a temporary restraining order. Alternatively, the court has not been presented with any evidence that Defendant will suffer any harm if Plaintiff's TRO Motion is granted. The balance of equities tips in Plaintiff's favor because the court does not perceive any reason Defendant's allegedly unauthorized use of Plaintiff's trade secret information deserves legal protection.

Finally, the court finds that the evidence before it at this time supports the conclusion that an injunction is in the public interest. *See, e.g.*, *T&S Brass & Bronze Works, Inc. v. Slanina*, Civil Action No. 6:16-03687-MGL, 2016 WL 9308098, at *4 (D.S.C. Nov. 22, 2016) (finding that the public has an interest in prohibiting a defendant from using a plaintiff's "intellectual property, confidential information, and trade secrets in violation of contractual and legal obligations.").

Having considered Plaintiff's evidence, this court concludes that Plaintiff has successfully shown that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest in this case. *Winter*, 555 at 20; *The Real Truth About Obama*, 575 F.3d at 346–47. Accordingly, this court concludes that issuance of a Temporary Restraining Order is

appropriate.

    4.    *TRO Relief*

In accordance with Rule 65(d), this court provides that Defendant Kelley Lloyd and all other persons in active concert or participating with her are restrained from:

    a. Using, or disclosing to any third party, any of The Boone Insurance Agency, Inc.'s Confidential Information[6];

    b. Retaining, using or disclosing any papers, customer lists, marketing materials or information, books, records, files or other documents, copies thereof, or notes or other materials derived therefrom, or other confidential information of any kind belonging to The Boone Insurance Agency, Inc. pertaining to The Boone Insurance Agency, Inc.'s business process and procedures, sales, financial condition, or products;

    c. directly or indirectly soliciting or contacting any person, company or business that was a customer, supplier, vendor or prospective customer of The Boone Insurance Agency, Inc. for the purpose of competing against the Business of The Boone Insurance Agency, Inc.; and

    d. conducting any meetings, calls or conferences Kelley Lloyd has scheduled that were initially scheduled through her employment with The Boone Insurance Agency, Inc. or were follow-ups to any meetings, calls or conferences she had as an employee of The Boone Insurance Agency, Inc.

Defendant Kelley Lloyd is not prohibited from using information that is generally available

---

[6] "Confidential Information" means:

> all confidential, proprietary, or non-public information, whether or not in a written or recorded form, that Kelley Lloyd had access to as an employee of The Boone Insurance Agency, Inc., including, but not limited to, any secrets or confidential technology or proprietary information of The Boone Insurance Agency, Inc., including, without limitation, customer lists, marketing plans or materials, methods and business practices in providing administrative services to government contractors, rating of insurance products, or any other trade secrets of The Boone Insurance Agency, Inc., or any matter or thing ascertained by Kelley Lloyd through her employment with The Boone Insurance Agency, Inc., the use or disclosure of which matter or thing might reasonably be construed to be contrary to the best interests of The Boone Insurance Agency, Inc. or to give any other party a competitive advantage over The Boone Insurance Agency, Inc.

to the public. To the extent Defendant Kelley Lloyd transferred any of The Boone Insurance Agency, Inc.'s Confidential Information to any device, Lloyd should within three (3) days of her receipt of this Order, identify the information transferred and the device to which it was transferred. To the extent that Defendant Kelley Lloyd has copies of The Boone Insurance Agency, Inc.'s electronic and hard copy files, documents, information and other property in her possession custody or control, Lloyd should deliver a list identifying said items to The Boone Insurance Agency, Inc. within three (3) days of her receipt of this Order.

   5.   *Bond*

Rule 65 provides that "[t]he court may issue . . . a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In a supplemental submission requested by the court, Plaintiff suggested that an appropriate bond in this matter would be either $0, $5,000.00, or $15,000.00. (*See* ECF No. 8.) After considering the circumstances alleged in the instant TRO Motion, the court will require Plaintiff to post a bond of fifteen thousand dollars ($15,000.00) to take advantage of the relief granted in this Order. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999) (acknowledging the requirement that a district court set an injunction bond and also acknowledging that the court can set the bond "in such sum as the court deems proper").

## V.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Plaintiff The Boon Insurance Agency, Inc.'s Motion for Temporary Restraining Order. (ECF No. 5.) This Temporary Restraining Order will become effective upon Plaintiff's posting of fifteen thousand dollars ($15,000.00) security/bond with the Clerk of Court. The Clerk of Court is directed to place the funds in the

amount of $15,000.00 in an interest-bearing account. This Temporary Restraining Order shall remain in place for a period of fourteen (14) days or for as long as the court shall otherwise order pursuant to Rule 65(b)(2). The court will conduct a hearing on the matter of Plaintiff's Motion for Preliminary Injunction on Thursday, September 10, 2020, at 9:30 a.m. in Courtroom No. 3 at the Matthew J. Perry, Jr. United States District Courthouse, 901 Richland Street, Columbia, South Carolina 29201.

Plaintiff shall immediately serve this Temporary Restraining Order on Defendant. The court will consider any responsive briefing filed by Defendant as long as it is submitted by 5 p.m. on Tuesday, September 8, 2020. Defendant is hereby on notice that failure to appear at the September 10 hearing may result in the imposition of a preliminary injunction against her pursuant to Rule 65.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 27, 2020
Columbia, South Carolina